Good morning, Your Honors. May it please the Court, Appellate and Law Group, Brett Stone for appellants. I'd like to reserve four minutes for rebuttal. All right, watch your time. The time remaining is your total time that you have. Thank you. All right. Your Honors, there are three separate and distinct reasons why this Court should reverse the District Court's judgment and remand the case with instructions to grant Haskins' motion for summary judgment and deny Wausau's motion for summary judgment. Wausau breached its contractual obligations under the contracts. Haskins did not breach their duty of cooperation. Haskins did not assume responsibility for its own defense. First, the issue of Wausau's breach results from a scheme Wausau employed to that it knew would cost hundreds of thousands of dollars in defense dollars and possibly more than a million dollars in indemnity costs. Wausau breached its duty to defend by never reaching a coverage decision, not accepting tender, not agreeing to defend, not agreeing to pay, and not paying even a single dollar of defense costs during the entire penancy of the underlying action. Instead, Wausau pretended to negotiate a fake settlement with the insured's adversary. How was the settlement fake? Your Honor, it provided no release. It was without prejudice. It did not contain a covenant not to sue. All it did was expose the Haskins, its insureds, to future litigation. It would bankroll the insured's adversary. It would cause its insureds to waive its rights under Rule 13 of compulsory counterclaims, waive res judicata, waive collateral estoppel. There was nothing that was good faith about that settlement. But wasn't Cherokee prepared to dismiss its action as part of the settlement? It was only prepared to dismiss its past costs with prejudice, but it reserved its future costs without prejudice. But wasn't there representation that there were no foreseeable future costs? There was no such representation. Even so, if there were costs that were, that became due in the future, couldn't those also be tendered to the insurance company for coverage? If I understand Your Honor's question, if the Haskins were faced a later lawsuit by Cherokee asserting those future costs, the answer is yes, the Haskins could call on Wausau to defend the case, but by then, Cherokee had already been bankrolled to litigate with Haskins, would have a complete different picture and new preparation for the second lawsuit, nothing good. But it would just be for costs, right? Because that was the only thing that was not covered in the settlement, right? Your Honor, in environmental cases like this one, it is often the case that a plaintiff will bring litigation seeking reimbursement of a typically a smaller amount of response costs that have already been incurred, but the real issue in any environmental case is usually the future response cost, the declaratory relief aspect of CERCLA that is incumbent upon a court under this scenario to decide in one action. CERCLA cases like this one really require the court to have all the issues decided at once and forever. Future costs included? Absolutely, future costs included. That's usually the biggest part of the case. Environmental cases and environmental cleanups are expensive, and among those environmental cleanups, this is one where the estimates were between $1.2 million, $1.3 million, and more than $2 million. But Cherokee was willing to settle for much less than that, correct? Cherokee was willing to settle for less than that, but that was only to resolve its past costs, only for $13,000, leaving everything in the future open, maintaining all of its claims against Wausau's insurance. What's the status of the CERCLA proceedings now? Have there been any additional costs that have been incurred? The underlying action was resolved, and it was resolved in a way that this proceeding is to go forward and determine what aspects of Wausau's breach of its duty to defend and to stand by its insurance will be used to fund the judgment. Those issues aren't before the court. I understand that, but I'm curious as to whether the future costs that were the subject of concern ever materialized. They will materialize. It has not been resolved. There has not been any resolution of the contamination that still is in place and still needs to be resolved. Your Honor, rather than provide a coverage position, Wausau gave empty platitudes. It said, we are continuing to investigate. We are concerned about whether there is coverage. We doubt that there is even a potential for coverage. And they never made a coverage decision. Not three months later when the district court said that their willingness to participate in settlement constituted their assumption of a duty to defend, they never actually defended a reasonably diligent insurer all they have to do to make a timely decision. Under the California law, that's what they're required to do, to defend immediately. They have to look at the case. But isn't that true if there is a proof of claim filed? No, Your Honor, it's not. The California Supreme Court makes quite clear that an insurer under a liability policy just like these, that our issue here, has a duty to defend immediately and to defend entirely. Now, what case supports the argument that in a context outside a proof of claim context, that the statute requiring immediate defense is there? The Buss decision is one of the seminal cases in the California Supreme Court that says that an insurer has a duty to defend immediately and to defend immediately. They have to defend entirely. Oh, I think I was thinking about, I thought you were talking about the 40-day rule. That's not what you're talking about. Your Honor, our position is that there isn't a specific number of days, of weeks, or any period of time that falls within that Buss ruling. What our position is, is that what would a reasonably diligent insurer do under the same set of circumstances? And what – how the decision is made on whether there's a duty to defend, you take the complaint or the claim or the pleading. You compare that to the policy and you decide, is there a potential for coverage? Is there any reasonable period of investigation built into that time frame from your point of view? Certainly there could be circumstances where, for example, the insurance policy wasn't readily available. There was – it was stored off-site and they needed time to go collect it so they could then compare it. Or – So is it your position that the only investigation that the insurer is entitled to is comparing the policy against the complaint? Is that your argument? That's my argument for the site. No outside investigation at all? That's my argument for the immediate decision on the duty to defend. They can continue to investigate. They can reserve their rights that there may no – may be no coverage eventually. And if that investigation results in a finding for which there is no potential for coverage, then they can exercise those rights they reserved and say there is no more coverage. They can go to the court and seek declaratory relief. They can do any number of things, but the law, the California Supreme Court, says you have to defend immediately. Does the California Supreme Court say you have to defend immediately based only on comparing the complaint to the policy? What case says that? Your Honor, the best decision that we've cited in our briefs that really sets forth what an insurer should do, and it happens to be one within an environmental context, is the Haskell case. Now, that's a court of appeals case. There is Supreme Court decisions that talk about comparing policies. Montrose is one as well. But the – that really offers a good analysis about an environmental case where you have to make a decision on what's in front of you right now. What case is that now? Haskell. Haskell. Is that in your brief? Yes, Your Honor. Okay. I'll find it. And the district court erred by concluding that Wausau's willingness to facilitate settlement constituted an acceptance of the duty to defend. That's not the law. An insurer's right to settle is entirely different from an insurer's duty to defend. The duty to defend is far more than a willingness to facilitate settlement. Wausau consistently said it had coverage concerns. It never invoked its duty to defend. It only invoked its right to settle. An insurer can't be said to impliedly defend when it explicitly denies it has made a coverage decision, when it explicitly tells its insured that it's still investigating whether there's coverage, when it explicitly says there appears to be no potential for coverage. How can an insurer that does not make a coverage decision, does not accept tender, does not pay defense costs, and does not even pay a single dollar in defense costs until after the district court ordered it to do so, be said not to be in breach? It can't. Counsel, I'm looking at your opening brief. Where did you cite Haskell in your opening brief? Your Honor, I've reserved some time for rebuttal. I can get you a page number when I return. All right. Even if Wausau did make a decision timely, and it certainly didn't, three months, even if we accept three months is when the district court said it made a decision, three months would not be timely in this circumstance when it already said it had all the policies and it had the complaint in front of it. But Wausau also didn't breach its duty to defend by not defending entirely. The settlement that it purported to have resolved its assumption of the duty to defend, it was never consummated. Even if it was consummated, it wasn't a complete settlement. It was without prejudice. It did not fully resolve any claim against the Haskins. And it did not provide a release or a covenant not to sue. With that settlement, Wausau got everything. It got out of any potential for paying further defense costs in what would be an extremely expensive environmental case, and arguably, Cherokee benefited a great deal as well. It would have been bankrolled for its case against Haskins as it approached trial. Counsel, how did it bankroll Haskins? Excuse me, how did it bankroll Cherokee? Here's the advantage that Cherokee got. Did it get $13,000 to put into its treasury? Sure, but it's more than just that, Your Honor. It also cut Haskins' insurance defense off, and that's what Cherokee was counting on. Cherokee will be counting only on, sorry, Haskins will be defending with its own money, and in that such a circumstance, that is all it would be changing, have to change the way necessarily of how it could put on its best defense. Would it have different experts? Would it have less depositions? What could it afford to do when it was all by itself? And Cherokee was using that to its advantage, and that's how Cherokee benefited. Very quickly, Your Honor, I want to also point out that Haskins did not breach its cooperation clause. First of all, Wausau was in breach, so it had no right to insist that Haskins do anything under the contract, because it was a breaching party, and a breaching party certainly can't insist on the other side's performance. But even if Haskins was in breach of the cooperation clause, Wausau was not substantially prejudiced. There's nothing in the record that talks about substantial prejudice. And the fact that there's no case law to support what the district did here is interesting, because the cooperation clause certainly has a purpose. What is the purpose? The first thing you need to do is look at the language of the contract. And what its purpose was is to have an insured provide the documents and information that's necessary to defend a case and ultimately to make an appropriate or wise settlement. It's not to make an insured sign onto an agreement affirmatively. It's not to have an insured just sit back and not comment on problems that it foresees. Thank you, Your Honor. I will return with more for you on rebuttal. All right. You have exceeded your time, but we will give you a minute for rebuttal. Good morning, Your Honors. Good morning. May it please the Court, Brian Barber for Respondent Wausau and Nationwide. The summary judgment motion and judgment that was entered by Judge Tiger should be affirmed was following cross motions for summary judgment. Wausau provided the best defense possible to the counterclaim. It settled it. It eliminated it. It took it out. And it was with prejudice for all the costs that had been incurred. And without prejudice for future that have not been incurred and likely won't be. I mean, this has been around for ten years. Maybe something will happen, but it hasn't. But if something does happen, will Wausau be committed to providing coverage or considering coverage under the policy? Yes, it would be. Now, you would need a suit. You would need it to trigger the duty to defend or indemnify the obligations. But that's correct. That's not out of the picture. But the important thing is we settled this one here. What is the claim here? Remember, this was Haskins chose to bring this lawsuit. And it was originally a lawsuit for breach of an alleged oral contract over this property. And there had been ongoing cleanup that had been going on and ongoing. Quite a bit had happened. Wausau went in and looked, there was a counterclaim. Wausau looked at the counterclaim. It gathered its policies. It asked specific questions. It needed to know how the contamination happened, when it happened, what happened. And what was the status of the ongoing discussion? Was it a breach of an oral contract? Was it an environmental claim? In doing so, during the course of the investigation, Wausau learned what was at stake and went in and immediately settled the case. Originally, Haskins objected to Wausau settling it. So taking the counterclaim, I think the Court is looking at what they seem to be suggesting is that we owe a defense to the entire action. That's not the case. We only would owe a defense to the counterclaim. The counterclaim was added. And there's some discussion in the record about why it was added by counsel that we were later able to obtain in our supplemental excerpts of record, I believe, about 140, where counsel said they weren't even going to add a counterclaim. Well, they did, and we looked at the counterclaim. That's what we're obligated to take care of. And that's what we did. We settled it. Counsel, your proposed settlement, did it completely settle the counterclaim, or was there anything left? The counterclaim was done. It was gone. Nothing left from the counterclaim. To bring a — they would have had to bring a separate action if they incurred future costs. It was done. How do we know that? The original release said that. And originally, Haskin's lawyer did not object to that and was aware of it. In fact, Mr. McKay, defense lawyer, said you originally had no problem with this settlement. And his concern on the without prejudice portion of the future was he didn't want to affect his affirmative defenses in the case. Well, and then how do we also know it resolved it? They filed a motion to dismiss the counterclaim, as they had to do under Rule 41. And guess what? They didn't — not only did they not settle it, they wanted to keep the counterclaim in the case. And they have fought that motion. And that's a direct breach of the cooperation clause. So what they're asking Wausau to do, defend the counterclaim, they fought to keep the counterclaim in the case. And what's really interesting about this is they acknowledge — and if you look at their mediation brief, they acknowledge that it is Wausau's right to settle. It's our call. It's our judgment call. If you want the insurance company involved, it's our goal. And that's what the policy says. The policy says we can do the investigation and settlement that we deem expedient. It's our judgment call. If you want insurance in, that's what you have to do. And that's what Blue Ridge suggests. And we've gone even further than Blue Ridge. We said, we'll settle this, take it completely out, we'll pay for it. We're not going to seek a single dime back from you. And not only that, we said, if you think you have defense costs, if you've incurred costs — and I don't know how they could have incurred hundreds of thousands of dollars' cost to defend a $13,000 counterclaim that was settled — but we said, send them to us in August of 2012. We didn't even see a single bill until November of 2013 when the case was already settled. And they sent all the bills for the case, $600,000, which involved separate parties, separate attempts to cut through corporate walls, deal with dissolved corporations. There's no way that would be reasonable. Counsel, the parties settled that, did they not? Yes. There's no outstanding costs. And provide me some background. The Cherokee property had a paint manufacturing plant or something. Is that the basis for the contamination? Yes. It was originally the Fuller O'Brien Paint Company. OK. And then what was on Haskins' property? Haskins had basically leased it out to various entities and still does today. There are various manufacturing entities. You could drive out and see the property. But was there an allegation that Haskins' tenants contaminated the property? I don't recall there was a specific allegation that Haskins had really done anything at that point. There had been earlier litigation because Haskins was an owner of certain properties and Haskins contended, look at Fuller O'Brien's contaminated our properties. Well, I just don't understand how we can come up with a $1.2 million settlement or somewhere in there for Haskins' liability if they didn't contaminate the property. Neither do I. And that's exactly it. Well, not only that, but Cherokee, who was in the process of dissolution, basically Cherokee bought Fuller O'Brien, cleaned it up, and sold the property. Then Cherokee's in the process of dissolving. These are entities that are set up to handle the cleanup. In the process of dissolution, Haskins brings a suit. Now, Haskins has not had to pay the money. They have not had to pay a cent to do this additional work, yet they still decided to bring the suit. And Haskins said, we may be ordered to do this. This is what the cleanup estimate was. We haven't been ordered to. We still haven't been ordered to. It's been about 10 years. That's key, because why even bring this litigation against these dissolved entities? But not only that, the dissolved entities agreed to settle the action for $150,000 in June of 2012. At the same time, in their brief, they acknowledged Wausau has exercised its right to resolve the counterclaim. So Haskins would have been sitting with $150,000 in its pocket. The counterclaim would have been done. Yet, what did they decide to do? They decided to spend $600,000 in attorney's fees and then take a judgment against themselves for 1.7 million. It wasn't even 1.2, and it went up during the mediation from 1.3 to 1.7. And if you look at the – their mediation brief, which is at the – our supplemental excerpts of records, you could see at 258, you could see why they did this. This was a setup. I don't believe they ever intended to accept Wausau's settlement. They simply wanted to try and use this as a setup to attack insurance assets. And that's not appropriate. That's not something the Court should countenance in this case. Wausau went in, and it's entitled to conduct an investigation. And as Your Honors had indicated, under California law, you don't have to just look at the complaint and just look at the insurance policies. That's clearly the starting point. Opposing counsel says that the case Haskell requires that. Only that? It doesn't. You could look at facts outside the complaint that you can get from your investigation. And I believe that's in Haskell, but I would go back to Montrose, which is the original duty to defend case. And also, if you look at Judge Tiger's original order on the duty to defend, we can look at facts. We look at the complaint. Some states, like Washington, just look at the complaint. You just look at the policies. In California, you can look, both sides can look at facts outside. And that's exactly what Wausau did in analyzing whether there was a defense obligation. And what did Wausau do? It looked at it. It did make a coverage determination. The best possible coverage determination, if you're sued and your insurance company settles the case, what more could you want? And you don't have to pay anything back. Now, did this settlement prejudice them? No. They could still go on with the lawsuit they'd originally decided to file. They had, and they could do that clean. They would not have a claim against them during the pendency of that lawsuit. So we streamlined it. Now, they may have had strategic reasons to say, well, I'd like to keep that counterclaim in. I'd love to argue to the jury that these dissolved corporations are greedy. How dare they make a claim against us for costs that are incurred years ago? And they can make that decision. And that may have been their correct strategic decision. It turned out it doesn't look like it was, because they could have had $150,000, not had to spend 600, and not get a judgment against them. But at the time they made that decision. But once you make that decision, then you're on your own. And that's what Blue Ridge suggests and the policies. If you want an insurance policy to provide it, you also at the same time have obligations. Obligations to cooperate in a settlement, in a settlement that we negotiated. Obligations also to provide information. And also, you also give the right to the insurance company to settle that, as it deems expedient. It's our call. And that's what the policy says, and that's what California law says. If you look at the Hurwitz case, and I believe that's instructive. It cites a line of cases. It says, look, the insured may want to go to battle and battle forever. But if the insurer says enough's enough and the settlement doesn't create additional liability for them, which it didn't. It didn't create it. It eliminated that. In fact, they filed a motion to take it out of the case, which Haskins chose to try and keep in. I think in some, in looking at this, this is exactly what you would want an insurance company to do. You'd want them to gather the information, investigate the claim. You would want them to try and go in and settle a case. In fact, there's numerous cases that say an insurance company has an obligation to settle. It isn't just that we can settle under a policy. It's insurers have an obligation to settle, to explore settlement. And we explored it and we resolved it very early in the case before you need to incur fees. And that settlement would have eliminated our obligation, which was the counter claim. It was done. At the same time, the insured had the opportunity to get $150,000 rather than get $1.7 million judgment against it. Wausau did this. Wausau gave the opportunity on several occasions for them to do the settlement. And Wausau warned them, if you don't want to do this settlement, then you're on your own and you can keep the counter claim in. You may see an advantage to it, but you can't ask us to pay for it. That's a direct breach. And that's prejudice. Because once the cooperation clause is breached and your obligation to cooperate, if we can show prejudice, we don't have obligations under the contract. And that's exactly what happened here. What was the prejudice? Well, we were involved in coverage litigation that certainly was unnecessary. We were involved in this ongoing claim. They prejudiced Wausau. That's enough to forfeit their rights under the insurance policy. And it was a deliberate choice. And maybe it was their best litigation choice because, remember, they were controlling the overall litigation. But it was their choice. That means they do not have a right to recover under the Wausau policy. And that prejudice is another ground. And that's exactly what Judge Tiger found, that they had breached that. And the cases that suggest prejudice can eliminate the coverage are all cases that we've cited. So in sum, unless there's any further questions, I'd just like to sum it up. This is the kind of case that should be affirmed and this behavior should not be encouraged. Environmental litigation for profit is not appropriate. It's not appropriate to file litigation in an attempt to set up insurance companies and pay claims where they can be resolved quickly without expenditure of And encouraging that and encouraging cooperation and settlement is the point. To reverse this is encourage the exact opposite in looking at the conduct. I don't have anything further to add. I want to thank you for your time. Thank you, counsel. Roboto, let's put a minute on the clock. Counsel, you were going to tell me where in your opening brief you cited Haskell. Your Honor, the Haskell decision, the citation is 33 Cal App 4th 963. Where is it in your brief? It must have fallen out of the, on the cutting room floor, Your Honor, as we were squeezing in word count. So I apologize. There are numerous other cases that follow along the same lines. Well, what's your second best case? Because you said that was your best case for the proposition that the insurer is limited to comparing the allegations in the complaint to the provisions of the policy. So what's your second best case? Sure. The Montrose case is a great case, Your Honor. At the outset, what an insurer must do is compare the allegations to the complaint to the policies. And from there, it can make a coverage decision. It can continue to investigate and make a change, but that's where the coverage decision ends. This is exactly the kind of case that would encourage insurance companies, if you were to affirm, to never make a coverage decision, never officially agree to defend, never pay any defense costs, do nothing to further its insurer's defense, and reach settlements that are by definition bad faith because they don't provide a complete release. An affirmance would be a mistake, Your Honors. We encourage you to reverse. Thank you very much. Thank you, counsel. Thank you to both counsel for your arguments in this case. Case just argued is submitted for decision by the court. The next case on calendar for argument is Delphix Corporation versus Embarcadero Technologies.
judges: Rawlinson, Owens, Rice